P. 1/19

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

Civil Action No. 5:25-cv-00942-SB-JDE

HECTOR RUBEN MCGURK

(Plaintiff)

v.

UNITED STATES OF AMERICA, et al.,

(Defendant)

and

UNITED STATES FEDERAL BUREAU OF PRISONS

(Defendant)



FILED
CLERK, U.S. DISTRICT COURT

DEC 10 2025

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

COMPLAINT FILED UNDER THE FEDERAL

TORT CLAIM ACT (FTCA), 28 U.S.C. §§

1346, 2671, et seq.

PRELIMINARY "PRO SE" STATEMENT

The Plaintiff is filing this complaint under the Federal Tort Claims Act pro se absent the professional assistance of counsel. Therefore, the Court is respectfully entreated to liberally construe the plaintiff's pro se arguements seeking relief in this case. See:

CASE No. 5:25-cv-00942-SB-JDE                                    P. 2/19

Pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers; if the court can reasonably read pleading to state a valid claim on which a litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.

## BASIS FOR JURISDICTION

This court has jurisdiction over the matter before the Court, the Federal Tort claims Act ("FTCA") permits a federal prisoner to bring a civil action against the United states for injuries caused by the tortious acts of its employees. To the extent that the claim is subject to FTCA jurisdiction, sovereign immunity is waived.

## PRISONER STATUS

The Plaintiff in this cause of action is a convicted and sentenced federal prisoner currently serving a federal "life" term of imprisonment at the FCI-Victorville #1 federal prison located at 13777 Air Expressway Blvd., Victorville, California.

## PREVIOUS LAWSUITS

The Plaintiff in this case initially brought the matter before this court under a Bivens action in the United states District Court, for the Central District of California, Case No. 5:22-cv-00529-SB-JDE. Subsequently, the case was

(2)

Case No. 5:25-cv-00942-SB-JDE

P. 3/19

dismissed due to the inability to meet the requirements of a Bivens (403 U.S. 388 (1971)) action. Civil Case No. 5:24-cv-01260-SSS-DTB, dismissed for lack of prosecution.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

In the matter before the court, the Plaintiff has exhausted the Administrative Remedy procedures available through the Federal Bureau of Prisons ("FBOP") in all required stages. Administrative Claim No. TRT-WXR-2024-00328.

COMES NOW, the Plaintiff, Nestor Ruben McGurk, (hereinafter "Plaintiff") pro se and files the above entitled Complaint against the United States of America for injuries caused by the tortious acts of its employees of the FBOP. In support of the plaintiff's claim and allegations, the plaintiff proffers unto the court the following facts, information, and corroborating documented records:

## STATEMENT OF THE CLAIM

May it please the Court:

In the midst of the COVID-19 pandemic, on December 21st of 2020 at 08:00 PST, FCI-Victorville #1 medical personnel collected a nasal swab specimen from the plaintiff for the purpose of COVID-19 testing to be conducted by Quest Diagnostics Laboratory - West Hills, under Requisition No. 0010215, and Specimen No. EN646608.

A documented record reflecting a chain of custody, processing and COVID-19 test results (Exhibit-A) was provided to Dr. Michael Mank on December

(3)

Case No. 5:25-cv-00942-SB-JDE                                                      P. 4/19

23rd of 2020 by the Quest Diagnostics Laboratory. Most Notable, this documented record indisputably reflects that the plaintiff's Nasal swab specimen produced a "positive" COVID-19 scientific test result. Moreover, the documented record irrefutably reflects that Dr. Michael Mank, a prominent member of the FCC-Victorville medical department which includes the FCI-Victorville #1 medical department, had knowledge of the plaintiff's "positive" COVID-19 test results.

On December 28 of 2020, a FCI-Victorville #1 medical staff member and the plaintiff's primary physician, Dr. John Nguyen, authored a medical report titled, "Clinical Encounter-Administrative Note". (a documented record) (Exhibit-B). Administrative Note 1 reads as follows:

1) ID_ COVID-19 detected 12/21/20 by NAAT
   Isolation protocol and order set written.

NAAT: Nucleic Acid Amplification Test,
   includes RT-PCR or TMA

New Radiology Request Orders: General Radiolgy-Chest- 2 views
                              Due Date: 12/29/2020
                              Priority: Today

Page 2 of 2 of this documented record reflects that Dr. John Nguyen completed his report with regard to the plaintiff on 12/28/2020 at 07:46 and Requested to be reviewed by Mank, Michael, Do.

This documented record, Exhibit-B, indisputably confirms that both, Dr. John

(4)

Case No. 5:25-cv-00942-SB-JDE                                          P. 5/19

Nguyen and Dr. Michael Mank, had affirmative knowledge of the plaintiff's "positive" COVID-19 test results. It is noteworthy to state that Dr. John Nguyen's aforesaid doctor's orders (Exhibit-B) were completely ignored and not acted upon by FCI-Victorville #1 medical staff members. Furthermore, the plaintiff was not aware and not informed his December 21st of 2020 nasal swab specimen had produced a "positive" COVID-19 test result.

On January 5th of 2021, a FCI-Victorville #1 medical staff member, a Registered Nurse misrepresented the plaintiff's December 21st of 2020 COVID-19 test results as being "negative", and had the plaintiff sign a COVID-19 Vaccine Consent Form (Exhibit-C), based on the representation of a negative COVID-19 test result. At the time that the plaintiff signed the said consent form, the plaintiff did not show or experience any COVID-19 symptoms despite being actively infected with the COVID-19 virus, apparently the plaintiff was "asymptomatic." Nonetheless, the plaintiff's December 21st of 2020 nasal swab specimen underwent scientific COVID-19 testing that produced a positive test result.

Subsequently, the morning of January 7th of 2021, the plaintiff was administered the initial dose of the Moderna COVID-19 vaccine by L. Singh, RN. Prior to receiving the COVID-19 vaccine, the plaintiff inquired if the vaccinating nurse had or knew the test results of his December 21st of 2020 nasal swab specimen. The vaccinating nurse responded by advising the plaintiff that had he tested positive for COVID-19 she would not be vaccinating him. This assurance gave way for the plaintiff to allow himself to be vaccinated. Shortly thereafter, the plaintiff began to experience a shortness of breath, hypersensitive skin irritation, severe muscle and joint pain, trouble

(5)

CASE NO. 5:25-CV-00942-SB-JDE                                                                P. 6/19

walking and trouble sleeping. Most notable, the plaintiff continue to the present day significantly deteriorating the plaintiff's quality of life.

Abruptly, on JANUARY 11th of 2021, the plaintiff was directed by the supervising housing unit officer to pack-up his personal property, because the plaintiff had tested positive for the COVID-19 virus, and had been reassigned to the COVID-19 Medical Isolation Housing Unit, despite having been administered the Moderna COVID-19 vaccine "four" days prior on JANUARY 7th of 2021. This was the first "unofficial" notification of a positive COVID-19 test result given by a housing unit officer unassociated with the FCI- Victorville #1 medical department.

On JANUARY 19th of 2021, the plaintiff submitted a cop-out ("staff request") directed to the FCI-Victorville #1 medical department (Exhibit-D) alleging a claim of "medical negligence" that went unanswered by medical staff. Then, three days later on JANUARY 22nd of 2021, without ever being examined, the plaintiff was diagnosed as recovered from the COVID-19 virus and transferred to a general population housing unit.

On February 2nd of 2021 the plaintiff was administered the second dose of the Moderna COVID-19 vaccine. Prior to being vaccinated, the plaintiff advised the vaccinating nurse that he had not recovered from the symptoms contracted following the initial dose of the Moderna COVID-19 on JANUARY 7th of 2021. The vaccinating nurse explained that the symptoms were evidence that the vaccine was doing its job building antibodies against the COVID-19 virus. Following the administration of the second dose of the Moderna COVID-19 virus, all previously mentioned side effects were significantly intensified and debilitating. Concerned, on several occasions

(6)

Case No. 5:25-cv-00942-SB-JDE                                                    P. 711

the plaintiff attempted to speak and acquire advise from a nurse who informed she did not have the time. The nurse, like the others, instructe the plaintiff to submit a sick-call request and would be seen. Following the nurse's instructions, the plaintiff submitted at least two medical request forms via the institutional mail system due to the lack of prisoner movement, the medical request forms passed unresponsive. Upto this point, the plaintiff was not provided any medical attention.

The plaintiff requested a copy of his COVID-19 test results, (Exhibit-A) this documented record reflects that "Written Notice" was provided by Quest Diagnostics Laboratory December 23rd of 2020 confirming the plaintiff's December 21st of 2020 had produced a positive test result for the COVID-19 virus, to Dr. Michael Mank, a medical staff member of FCC Victorville to include FCI-Victorville #1. This "Written Notice" is corroborated and clear acknowledgement of a positive COVID-19 test result by Exhibit-B, Dr. John Nguyen's Clinical Encounter and Administrative Note.

Most notable, at the time the plaintiff was administered the Moderna COVID-19 vaccine on January 7th of 2021, was not approved by the Food and Drug Administration ("FDA") to prevent COVID-19. The FDA authorized the vaccine for "emergency use only" in response to the raging COVID-19 pandemic. More to the point, the Moderna COVID-19 vaccine or anyother COVID-19 vaccine had not undergone the same type of review as an FDA approved or cleared product and currently no scientific evidence exists identifying long term adverse side effects associated with COVID-19 vaccine[s]. Note the following Center for Disease Control ("CDC") warnings in consensus with renown epidemiologists:

(7)

Case No. 5:25-cv-00942-JDE                                                    P. 8/19

1. Individuals <u>who test positive</u> for the COVID-19 virus <u>should</u> <u>delay</u> receiving a COVID-19 vaccination for <u>90 days</u> from the date of the initial positive diagnosis.

2. "If you're <u>infected</u> you should stay home, you <u>should not</u> get the vaccine," Deborah Lehman, MD, Infectious Disease Specialist at the University of California, Los Angeles.

3. "The CDC recommends that people who are <u>actively infected</u> with the COVID-19 virus <u>not receive</u> the vaccine until their symptoms have completely resolved," Paul Offit, MD, Director of the Vaccine Education Center at Children's Hospital of Philadelphia.

4. People with COVID-19 who have symptoms <u>should wait</u> to be vaccinated until they have recovered from their illness; and those <u>without symptoms</u> <u>should also wait</u> until they meet the criteria <u>before</u> getting vaccinated.

In the matter before the court, despite <u>having knowledge</u> that the plaintiff's <u>December 21st of 2020</u> nasal swab specimen had <u>scientifically</u> produced a "<u>positive</u>" COVID-19 test result the plaintiff <u>should not</u> have been vaccinated on January 7th of 2021, well <u>within the 90 days</u> instructed by the C.D.C and renown epidemiologists referenced above.

Knowing of the plaintiff's positive COVID-19 via a documented record provided by Quest Diagnostics Laboratory, (<u>Exhibit-A</u>), FCI-Victorville #1 medical staff members <u>failed</u> to inform the plaintiff of his "positive".

(8)

CASE NO. 5:25-CV-00942-SB-JDE                                    P. 9/19

COVID-19 test results. Instead, medical staff on January 5th of 2021 misled the plaintiff to trust his December 21st of 2020 nasal swab specimen had produced a "Negative" COVID-19 test result granting the plaintiff confidence to sign the "COVID-19 Vaccine Consent" form (Exhibit-e) and allow himself to be vaccinated on January 7th of 2021.

Moreover, in the absence of knowledge of a pivotal fact, such as, the positive COVID-19 test result produced by the plaintiff's December 21st of 2020 nasal swab specimen clearly renders the plaintiff's consent as legally invalid.

Black's Law Dictionary, 10th Ed., Page 368, defines "Informed Consent" as follows:

A person's agreement to allow something to happen, made with full knowledge of the risks involved and the alternatives... A patient's knowing choice about a medical treatment or procedure, made after a physician or health care provider discloses whatever information a reasonably prudent provider in the medical community would give to a patient regarding the risks involved in the proposed treatment or procedure.

It is an indisputable fact, had the plaintiff been informed that his December 21st of 2020 nasal swab specimen produced a positive COVID-19 test result, the plaintiff would have refused to sign the COVID-19 Vaccine Consent form. The failure to disclose this pivotal medical fact has resulted in the deterioration of the plaintiff's quality of life and represents clear medical negligence, and to deprive the plaintiff of appropriate and competent care violates the Eighth Amendment.

(9)

Case No. 5:25-cv-00942-SB-JDE                                                    P. 10/19

After being **completely** **ignored** by FCI-Victorville #1 medical staff members, the plaintiff initiated the FBOP Administrative Remedy process by filing a Request for Administrative Remedy, Informal Resolution (BP-8) This filing will reflect that all the plaintiff sought to resolve this matter was to be **examined** by an epidemiologist, a neurologist and an Orthopedic surgeon, due to the serious side effects the plaintiff was experiencing following the botched vaccination error of being vaccinated during a time period when the plaintiff was actively infected with the COVID-19 virus. The plaintiff **did not** receive a response to this BP-8 filing, it was **ignored**. (Refer to Appendix A).

On **August 10th of 2021**, the plaintiff filed a Request for Administrative Remedy (BP-9) (Refer to Appendix B) and received a "remarkable" response from the Warden's office suggestive of a "cover-up" to **defect** **responsibility** and **liability** for the vaccinating debacle executed by prison staff on **January 7th of 2021** unto Quest Diagnostics Laboratory. A relative excerpt derived from Paragraph #2 from the single page response, reads as follows: (Exhibit- H)

"A review of your medical records indicates you were tested for COVID-19 on December 21, 2020. We are required to send all of our COVID-19 tests to Quest Diagnostics. In December, 2020, Quest Diagnostics had an issue with their system, and many results went missing for several weeks. Your positive result was received on January 11, 2021, at which time you were moved to the Isolation unit. When you were vaccinated on January 7, 2021, it was not known that you had tested positive..."

(10)

Case No. 5:25-cv-00942-SB-JDE                                    P. 11/19

This remarkable response confirms the plaintiff was tested for COVID-19 on December 21, 2020 (initiating process), and represents an admission that the plaintiff was, in fact, vaccinated with the Moderna COVID-19 vaccine on January 7th of 2021 during a time period when the plaintiff was actively infected with the COVID-19 virus. Even if, the Quest Diagnostic Laboratory had an issue with their system, this reference does not absolve the United States from responsibility and liability due to the tortious acts of its medical personnel of continuing to vaccinate the plaintiff, if in fact the plaintiff's COVID-19 test results went missing for several weeks in December of 2020. Most notable, medical staff had and have an ethical duty to their patients under their care to safeguard the patient's health from potential harm that may result. If the Quest Diagnostics Laboratory had an issue with their system that resulted in COVID-19 test results going missing in December of 2020, medical staff had an ethical duty to suspend COVID-19 vaccinations until the vital missing test results can be recovered. A failure to suspend COVID-19 vaccinations for the individuals including the plaintiff whose COVID-19 test results allegedly went missing for several weeks is tantamount to medical negligence.

Paragraph 2 excerpt previously referenced above begins with the phrase, "A review of your medical records", this phrase is not a truthful assertion. Most notable, Paragraph 2 further asserts that the plaintiff's positive test result was received on January 11, 2021, and when the plaintiff was vaccinated on January 7th of 2021 it was not known that the plaintiff had tested positive.

Within Paragraph 2 or within the entire response there is absolutely no reference or explanation as to how Dr. John Nguyen (Exhibit-B) knew and document his knowledge in his Administrative Note dated 12/28/2020. Dr. John

(11)

Case No. 5:25-cv-00942-SB-JDE                                    P.12/19

Nguyen's 12/28/2020 Administrative Note is consistent with Exhibit-A. Quest Diagnostic Laboratory's **Written Notice** sent to Dr. Michael Mank on **12/23/2020**. Therefore, it is an irrefutable fact that Dr. John Nguyen and Dr. Michael Mank, independently and collectively **had knowledge** of the plaintiff's positive COVID-19 test results on or about **December 23rd of 2020**.

ON **January 22, 2021**, Dr. John Mank authored a medical report titled "Clinical Encounter-Administrative Note, excerpts read as follows: **(Exhibit-E)**

Administrative Note 1

   As per BOP Guidance COVID-19 Testing: Indications for Testing Inmates in the Federal Bureau of Prisons, inmate is being released from ISOLATION and is now Resolved/Recovered from COVID-19.

Details: COVID screening-A/P

   1) ID_ COVID-19 detected **12/21/2020** by NAAT

ON **July 20th of 2021**, the plaintiff was examined by Dr. Salvador Villalon and the Physiotherapist ("PT"), and Dr. Salvador Villalon authored a medical report titled "Clinical Encounter" on **July 22, 2021 (Exhibit-F)** is consistent with **Exhibit-E** referenced above. The following excerpts are derived from Dr. S. Villalon's report and read as follows:

π1

"... As per PT, Pt had impaired muscle performance, he has impaired tolerance to activity due to pain, however he demonstrates full functional independence."

(12)

CASE No. 5:25-CV-00942-SB-JDE                                    P. 13/19

¶ 3

"Pt was tested positive for COVID-19 last **12/21/20**, and had recovered from covid **1/22/21**. Pt had received the COVID-19 Moderna vaccine on **1/7/21** and **2/02/21**. Pt c/o of muscle aches and joint aches about 2 weeks after receiving the 1st dose of the vaccine, and _again_ worsened after the 2nd dose of the vaccine. Pt _still_ c/o of body aches all over, and unable to sleep well at night due to his body aches. Pt currently taking acetaminophen tablet which is not helping him for the pain."

Unquestionably, the dates (time frame) referenced confirm the plaintiff was vaccinated during a time period when he was actively infected with the COVID-19 virus.

Upon the plaintiff's request for a copy of his medical history, on **03/03/2022** K. Cook, NM/HIT generated a medical history report, **(Exhibit-6)**, **Page 4 of 4** reflects an entry dated **12/28/2020**, Dr. John Nguyen entered the plaintiff's COVID-19 was detected on **12/21/2020** by NAAT.

**Exhibit 6** further reflects an entry dated **1/22/2021** by Dr. Michael Mank, that the inmate (Plaintiff) _has met_ CDC symptom based criteria for _release_ from ISOLATION, COVID-19 **detected 12/21/2020** by NAAT.

Reverting back to the plaintiff's Administrative Remedy filings, the plaintiff filed a Regional Administrative Remedy Appeal **(BP-10)** on September 22, 2021; (Appendix C) that was **ignored** and **not responded to.**

On **November 15, 2021**, the plaintiff filed a Central Office Administrative Remedy Appeal **(BP-11) (See, Appendix D)** and on _January 18, 2022_, in

(13)

Case No. 5:25-cv-00942-SB-JDE                                    P.14/19

response to the plaintiff's BP-11 filing Jim Connors, Administrator National Inmate Appeals responded. **(Exhibit-I)**. The following excerpts are derived from Mr. Connors response that read as follows:

We have reviewed documentation relevant to your appeal and based on our findings, <u>concur</u> with the manner in which the Warden responded to your concerns at the time of your request for Administrative Remedy. Our succeeding review of your medical record reveals you were <u>appropriately</u> <u>vaccinated</u> for COVID-19 on <u>January 7, 2021</u>, February 2, 2021 and October 29, 2021. On <u>December 18, 2020</u>, <u>you were tested</u> for COVID-19 due to possible exposure. At the time, <u>you were asymptomatic</u>. **On <u>December 28, 2020</u>, test results <u>returned</u> showing you were positive for COVID-19.** As such, you were <u>placed on isolation</u>. You remained <u>asymptomatic at all times</u>. On <u>July 20, 2021</u>, were evaluated by a <u>physical therapist</u>. Following this evaluation, you were found to be able to perform all your activities of daily living and work tasks independently. Lastly, you were evaluated by a medical officer on <u>November 16, 2021</u>, via the routine chronic care clinic (ccc). During this evaluation, there was <u>no mention</u> of <u>new symptoms</u> as they pertain to potential side effects of the COVID-19 vaccine. Your medical issues at this clinic were appropriately addressed. Based on this information, we find no further review is warranted regardin this matter

This remarkable response states that it "<u>concurs</u>" with the manner in which the Warden responded to the plaintiff's concerns at the time of the plaintiff's request for Administrative Remedy. Most notable, the Warden's response **(Exhibit-H)** <u>outright contradicts</u> <u>Exhibit-J</u>, the <u>Written Notice</u> given of a positive test result provided by Quest Diagnostics Laboratory,

(14)

Case No. 5:25-cv-00942-SB-JDE                                                    P.15/19

the admission that the plaintiff was vaccinated with the moderna COVID-19 vaccine within the time frame the plaintiff was actively infected with the COVID-19 virus in violation of CDC Guidelines, Exhibit-B, Dr. John Nguyen's Clinical Encounter-Administrative Note that reflects knowledge of a December 21, 2020 COVID-19 infection date and December 23, 2020 written Notification date, inaccurate COVID-19 test date, the plaintiff was placed in isolation on January 11, 2021 and not December 28, 2020, and at no time was the plaintiff ever advised by FCI-Victorville #1 medical staff of his positive COVID-19 test results or that the plaintiff was diagnosed as being asymptomatic to the present day.

Nonetheless, whether or not the plaintiff was asymptomatic is irrelevant and mute, the plaintiff was scientifically tested using NAAT (Nucleic Acid Amplification Test includes RT-PCR or TMA). Unquestionably, Exhibit-I contains a plethora of malevolent disinformation to discourage further filings and subvert justice.

It is an indisputable fact that "documented records" are an unimpeachable source of evidence they either represent truthful facts or expose the malevolent disinformation contained therein. In this case, the documented records confirmed a gross vaccination error, medical negligence and a gross effort to manipulate and misdirect the truth.

Further, the plaintiff has not received medical care for the injuries caused by FCI-Victorville #1 medical staff despite being aware that a failure to to provide the plaintiff with competent medical attention could result in further significant injury or the unnecessary and wanton infliction of pain.

(15)

Case No. 5:25-cv-00942-SB-JDE

To the present day, the plaintiff continues to suffer with sever muscle and joint pain, shortness of breath, hyper skin sensitivity, sever back pain with spasms. Due to severe pain and discomfort caused by said symptoms sleeping and other normal activities have become extremely difficult. Further, the "pain management approach" adopted by this institution's medical department fails to address the core issues of the plaintiff's symptoms knowing the symptoms and cause may result in further more serious health problems, and in unnecessary and wanton infliction of pain in violation of the Eighth Amendment and a prisoner's right to competent medical care under the Federal Bureau of Prisons' "Policy Program Statement."

Moreover, FCI-Victorville #1 is classified as a "Care Level Three" institution, meaning its charged with providing competent medical care for chronically ill prisoners and other serious medical problems. Strikingly, the plaintiff recently became aware that this institution employs "one" physician solely dedicated to the institution's Suboxin distribution program. More alarming is the fact that there is no physician employed to provide competent medical care for the institution's 1,600 federal prisoners, instead the institution employs "one" physician's assistant who's presence is erratic and unreliable. It must be noted that all the physicians referenced in this complaint are no longer at this institution and have not been here for a number of years.

Most notable, after falling ill on December 28, 2024, the B-Lower housing unit officer arranged to have a nurse examine the plaintiff that evening. The plaintiff wheeled to the medical department in a "wheelchair" by another prisoner due to the plaintiff's inability to walk under his own power due to weakness resulting from his inability to hold down nutrients. The plaintiff further

( 11.)

CASE No. 5:25-CV-00942-SB-JDE                                    P.17/19

disclosed the following systems: shortness of breath, severe muscle and joint pain, severe hyper skin sensitivity, and urinary incontinence to the attending nurse. The nurse took the plaintiff's vitals and directed the plaintiff to "survive" until Monday, December 30, 2024, exploing that she was to "only" medical staff member on duty and her primary duty was to dispense insulin at the "four" institutions that make up this prison complex. The plaintiff was then instructed to return to the housing unit.

Early morning of December 30, 2024, the plaintiff was helped to the medical department by two prisoners and signed up for "sick-call". After waiting approximately two hours the plaintiff attempted to contact a nurse when he temporary lost his equilibrium and conscientiousness and fell to the floor. A prisoner alerted medical staff and he helped the plaintiff to his feet. The plaintiff was instructed to sit in a chair where Physician's Assistant, Martin Hernandez, took the plaintiff's temperature and stated the plaintiff had a high temperature and the flu, whereby ignoring the plaintiff's complaints and symptoms. PA Hernandez placed the plaintiff in a Medical Isolation cell until his fever subsided and provided the plaintiff with two "Motrin tablets. The plaintiff remained in the Isolation cell experiencing all symptoms referenced above and had episodes of delirium without medical staff making rounds to check-up on his condition. Two and a half days later, the plaintiff with all the aforesaid symptoms that were never addressed was released from isolation and directed to return to the housing unit wearing his urine soiled prison uniform by compound officers. It must be noted that upon the plaintiff's release from isolation the institution was on complete lock-down status. The plaintiff remained severely ill and submitted a "sick call"

(17)

Case No. 5:25-cv-00942-SB-JDE

P.18/18

form requesting to be tested for a Urinary Track Infection, this written request has been <u>ignored</u> to the present day but the infection continues.

In this circumstance, the plaintiff's cellmate, James Nino, nursed the plaintiff during the most difficult times, by handwashing the plaintiff's urine soaked clothes and linen, lifting up the plaintiff when he fell and cleaned the urine from the floor, he further provided the plaintiff with multi-vitamins and Vitamin C. Mr. Nino did more to help the plaintiff than the medical staff who <u>did nothing</u> to address the plaintiff's symptoms.

Moreover, this current illness is closely related to the plaintiff present case relative to the botched COVID-19 vaccination. The symptoms are similar to the the symptoms experienced after being vaccinated with the Moderna COVID-19 vaccine during a time period when the plaintiff was actively infected with the COVID-19 virus, with the exception of the delirium and urinary incontinence. It must be noted that the plaintiff has developed a high tolerance for pain, since the plaintiff has been deprived of medical care since the botched vaccination to the present day.

It is the plaintiff's contention that a fair settlement in this case would be $300/day beginning from January 7, 2021 to the present day, and to be examined by an epidemiologist unassociated with the Federal Bureau of Prisons.

(18)

Case No. 5:25-cv-00942-SB-JDE                                    P. 19/19

## CONCLUSION

WHEREFORE, the foregoing reason    stated herein or any other reason[s] the Court may deem applicable, the plaintiff respectfully entreats the court to allow the plaintiff's complaint to proceed to further judical proceedings

Respectfully Submitted, This, __2nd__ Day of __April__, 2025.

Hector Ruben McGurk
Hector Ruben McGurk
No. 25843-180
Federal Correctional Complex
FCI-Victorville #1
P.O. Box 3725
Adelanto, California 92301

(19)

Case No. 5:25-cv-00942-SB-JDE

P. 1/22

# EXHIBIT A

Case No. 5:25-cv-00942-SB-JDE                                                P. 2/22

 Quest
Diagnostics

Report Status: F

MCGURK, HEC1

| Patient Information | Specimen Information | Client Information |
|---|---|---|
| **MCGURK, HECTOR**<br><br>DOB: 11/21/1959    AGE: 61<br>Gender:    M<br>Phone:    760.530.5418<br>Patient ID: 25843-180<br>Health ID: 8573025940953844 | Specimen:    EN546660B<br>Requisition: 0010215<br><br>Collected:    12/21/2020 / 08:00 PST<br>Received:    12/22/2020 / 03:57 PST<br>Reported:    12/23/2020 / 06:31 PST | Client #: 92394000    MAIL000<br>MANK, MICHAEL<br>FCC VICTORVILLE<br>Attn: USP V\m<br>13777 AIR EXPRESSWAY BLVD<br>VICTORVILLE, CA 92394-0510 |

### SARS CoV 2 (COVID-19) Tests

| Test Name | Result | Reference Range | La |
|---|---|---|---|
| SARS CoV 2 RNA(COVID 19),   QUALITATIVE NAAT | | | EN |
| SARS CoV 2 RNA | DETECTED | NOT DETECTED | |

A Detected result is considered a positive test result for COVID-19. This indicates that RNA from SARS-CoV-2 (formerly 2019-nCoV) was detected, and the patient is infected with the virus and presumed to be contagious. If requested by public health authority, specimen will be : for additional testing.

Please review the "Fact Sheets" and FDA authorized labeling available for health care providers and patients using the following websites: https://www.questdiagnostics.com/home/Covid-19/HCP/NAAT/fact-sheet2 https://www.questdiagnostics.com/home/Covid-19/Patients/NAAT fact-sheet2

This test has been authorized by the FDA under an Emergency Use Authorization (EUA) for use by authorized laboratories.

Due to the current public health emergency, Quest Diagnostics is receiving a high volume of samples from a wide variety of swabs and med for COVID-19 testing. In order to serve patients during this public health crisis, samples from appropriate clinical sources are being tested. Negative test results derived from specimens received in non-commercially manufactured viral collection and transport media, or in media a sample collection kits not yet authorized by FDA for COVID-19 testing should be cautiously evaluated and the patient potentially subjected k extra precautions such as additional clinical monitoring, including collection of an additional specimen.

Methodology: Nucleic Acid Amplification Test (NAAT) includes RT-PCR or TMA

Additional information about COVID-19 can be found at the Quest Diagnostics website: www.QuestDiagnostics.com/Covid19.

Physician Comments:

**PERFORMING SITE:**
EN    QUEST DIAGNOSTICS-WEST HILLS, 8401 FALLBROOK AVENUE, WEST HILLS, CA 91304-3226 Laboratory Director: TAH TOOCHINDA,MD, CLIA: 05D0642827

Case No. 5:25-cv-00942-SB-JDE

# EXHIBIT B

Case No. 5:25-cv-00942-SB-JDE

Case No. 5:25-cv-00942-SB-JDE

P. 4/22

## Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | MCGURK, HECTOR RUBEN | | | | Reg #: | 25843-180 |
| Date of Birth: | 11/21/1959 | Sex: | M    Race: WHITE | | Facility: | VIM |
| Note Date: | 12/28/2020 07:44 | Provider: | Nguyen, John MD | | Unit: | F03 |

Cosign Note - Lab Report Cosign encounter performed at Health Services.
**Administrative Notes:**

ADMINISTRATIVE NOTE   1        Provider:  Nguyen, John MD

A/P:
1)ID_COVID19 detected 12/21/2020 by NAAT
Isolation protocol and order set written.

**ASSESSMENTS:**

Confirmed case COVID-19, U07.1 - Current

**New Medication Orders:**

| Rx# | Medication | | Order Date |
|---|---|---|---|
| | Acetaminophen 325 MG Tablet | | 12/28/2020 07:44 |

**Prescriber Order:**    650mg Orally  -  three times a day PRN x 30 day(s)

Indication:   Confirmed case COVID-19

Order Set Name:  BOP - Infectious Disease - COVID 19 - v3

**New Radiology Request Orders:**

| Details | Frequency | End Date | Due Date | Priority |
|---|---|---|---|---|
| General Radiology-Chest-2 Views | One Time | | 12/29/2020 | Today |

Order Set Name:  BOP - Infectious Disease - COVID 19 - v3

Specific reason(s) for request (Complaints and findings):

COVID screening-A/P:
1)ID_COVID19 detected 12/21/2020 by NAAT

**New Non-Medication Orders:**

| Order | Frequency | Duration | Details | Ordered By |
|---|---|---|---|---|
| Isolation Precautions | One Time | | | Nguyen, John MD |

Order Set Name:  BOP - Infectious Disease - COVID 19 - v3

Order Date:        12/28/2020

| | | | | |
|---|---|---|---|---|
| Temperature | Daily | 14 days | and symptom check per CDC guidelines | Nguyen, John MD |

Order Set Name:  BOP - Infectious Disease - COVID 19 - v3

Order Date:        12/28/2020

**Other:**

A/P:
1)ID_COVID19 detected 12/21/2020 by NAAT
Isolation protocol and order set written.

**Disposition:**

P. 5/22

Case No. 5:25-cv-00942-SB-JDE

| | | | | |
|---|---|---|---|---|
| Inmate Name: | MCGURK, HECTOR RUBEN | | Reg #: | 25843-180 |
| Date of Birth: | 11/21/1959 | Sex:    M    Race: WHITE | Facility: | VIM |
| Note Date: | 12/28/2020 07:44 | Provider:    Nguyen, John MD | Unit: | F03 |

Placed in Contact Isolation

**Order Sets Used in This Encounter:**

BOP - Infectious Disease - COVID 19 - v3

**Copay Required:** No        **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Nguyen, John MD on 12/28/2020 07:46

Requested to be reviewed by Mank, Michael DO.

Review documentation will be displayed on the following page.

Case No. 5:25-cv-00942-SB-JDE

# EXHIBIT C

Case No. 5:25-cv-00942-SB-JDE

Case No. 5:25-cv-00942-SB-JDE                                              P. 7/22

BP-PENDING              COVID-19 VACCINE CONSENT – INMATE              CDFRM DEC
U.S. DEPARTMENT OF JUSTICE                              FEDERAL BUREAU OF PRISONS

I have been provided a copy of the COVID-19 Vaccine **Emergency Use Authorization (EUA)**
fact sheet dated ___12/2020___ I have had the opportunity to ask questions about the benefits
and risks of vaccination, including if I am pregnant, breastfeeding or have a weakened immune
system. I will agree to complete the number of vaccine doses as appropriate and indicated by
the manufacturer.

**Health Questions Prior to COVID-19 Vaccination (*Check yes or no*)**

| Yes | No | Health Questions |
|-----|-----|------------------|
| ☐ | ☒ | Are you sick today? |
| ☐ | ☒ | Have you ever had a severe allergy or anaphylactic reaction to any component of this vaccine or any other vaccine/injectable therapy? |
| ☐ | ☒ | Have you had any other vaccinations in the last 14 days? |
| ☐ | ☒ | Have you received monoclonal antibody therapy for COVID-19 in the last 90 days? |

☒ I consent to receive the COVID-19 vaccination.

| Dose # (1 or 2) | Vaccine Manufacturer | Lot Number | Expiration Date | Route | Deltoid (R) Deltoid (L) |
|-----------------|---------------------|------------|-----------------|-------|-------------------------|
| ① | Moderna | 026L20A | 6/28/21 | IM | ⓛ |

| Inmate Signature | | | Date |
|---|---|---|---|
| P. Amesuri | | | 1/5/2021 |

| Administered by Signature | | | Date |
|---|---|---|---|
| L. Singh, RN | | | 1/7/2021 |

| Administered by (name/title) | | | |
|---|---|---|---|
| S. Smith, RN | | | |

☐ I decline to receive the COVID-19 vaccination.

| Inmate Signature | Date |
|---|---|
| | |

| Witness Signature | Date |
|---|---|
| | |

| (PRINT) Witness Name |
|---|
| |

| (PRINT) Inmate Name (Last, First) | Register Number | |
|---|---|---|
| MCGURK, HECTOR | 25843-180 | |
| **Institution** | **Unit** | **Work Assignment** |
| FCC VICTORVILLE    VIM | F03-310L | |

DOCUMENT VACCINE ADMINISTRATION IN BEMR FLOW SHEETS.
SCAN VACCINE CONSENT IN BEMR DOCUMENT MANAGER – VACCINATION CONSENTS.

JAN 0 7 2021

P. 8/22

Case No. 5:25-cv-00942-SB-JDE

# EXHIBIT D

Case No. 5:25-cv-00942-SB-JDE

Case No. 5:25-cv-00942-SB-JDE

P. 9/22

page 1/4

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISON**

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| Medical Department, FCI-Victorville #1 | January 19, 2021 |
| FROM: McGurk, H. R. | REGISTER NO.: 25843-180 |
| WORK ASSIGNMENT: Education Department | UNIT: C-Lower, No. 118 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Greetings. Please be advised that I have effected "extraordinary" measures to safeguard myself from the COVID-19 virus and its variants since its inception to the present day due to my underlying medical conditions that place me at "high" risk to contract COVID-19 and its variants. Furthermore, I have not shown or experienced any symptoms relative to COVID-19 or its variants, specifically, I have not shown in the past to the present day to have had a "fever" above the normal range, confirmed by my medical records. Therefore, my "abrupt" transfer to the COVID-19 "Isolation" Unit (C-Lower) was "alarming," and inconsistent with my past medical history throughout this pandemic. Most notable, while housed at E-Upper (310) I was housed "alone"; now I have a cellmate who "unofficially" claims _____ thereby germinating the risk of contracting COVID-19.

(See Attachment)
(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

CASE No. 5:25-cv-00942-SB-JDE

P. 10/22

Page 3/4

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISON**

| TO: (Name and Title of Staff Member) Medical Department, FCI-Victorville #1 | DATE: January 13, 2021 |
|---|---|
| FROM: McGurk, H. R. | REGISTER NO.: 25843-180 |
| WORK ASSIGNMENT: Education Department | UNIT: C-Lower, No. 118 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

Please be advised that I currently bear a serious concern with respect to availability of my "second" (booster) Moderna Tx COVID-19 vaccination due to my transfer to the COVID-19 "Isolation" Unit (C-Lower). It must be vehemently noted that this "second" vaccination is due on or about February 4, 2021, 28 days following my initial vaccination on January 7, 2021.

Brief History

On or about December 29, 2020, I was directed to provide a nasal swab for COVID-19 testing. Most notable, I have "never" been advised by any medical staff as to the results of the above reference nasal swab or a relative written notice advising the results. According to news reports the CDC advises that individuals who test "positive" for COVID-19 should delay taking a COVID-19 vaccination

(See Attachment)
(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
|  |  |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

Case No. 5:25-cv-00942-SB-JDE

Page 3/4

P. 11/22

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISON**

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| Medical Department, FCI-Victorville #1 | January 19, 2021 |
| FROM: McGurk, H. R. | REGISTER NO.: 25843-180 |
| WORK ASSIGNMENT: Education Department | UNIT: C-Lower, No. 118 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

for 90 days from the initial positive diagnosis, this process was "disregarded"
in my circumstance. On Thursday, January 7, 2021, I was given the initial
Moderna Tx covid-19 vaccination and advised that the "second" Moderna Tx
covid-19 vaccination was to be administered 28 days later, on or about February
4, 2021. Another "alarming" fact arises in addition to my "abrupt" housing change
is the fact that I was given the Moderna Tx covid-19 initial vaccination,
either "prior" to the medical department receiving the December 29, 2020, Nasal
swab results or "after" having knowledge of a "positive" covid-19 test result,
either scenario strongly suggests medical negligence that cannot be redresse
in the mist of this serious pandemic. I must vehemently reiterate that I
have "never" experienced any symptoms associated with covid-19 or its

(See Attachment)
(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
|  |  |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

Case No. 5:25-cv-00942-SB-JDE                                          P. 12/22

Page 4/4

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**              **FEDERAL BUREAU OF PRISON**

| TO:(Name and Title of Staff Member) Medical Department FCI Victorville #1 | DATE: January 13, 2021 |
|---|---|
| FROM: McBurk, H. R. | REGISTER NO.: 25843-180 |
| WORK ASSIGNMENT: Education Department | UNIT: C-Lower, No. 118 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Variants. Please note, that taking the "second" Moderna Tk COVID-19 vaccination is of paramount importance, to include my return to a normal housing unit consistent with my (medical) chronic care requirements.

Please respond to my concern in a timely manner, and provide me with a copy of the December 29, 2020, Nasal swab test results. I cordially thank you in advance for your time and effort in this matter of "grave" importance.

Respectfully Submitted,
H. R. McBurk

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

Case No. 5:25-cv-00942-SB-JDE

P. 13/22

# EXHIBIT E

Case No. 5:25-cv-00942-SB-JDE

Case No. 5:25-cv-00942-SB-JDE                                                                              P. 14/22

# Bureau of Prisons
## Health Services
### Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | MCGURK, HECTOR RUBEN | | | Reg #: | 25843-180 |
| Date of Birth: | 11/21/1959 | Sex: M | Race: WHITE | Facility: | VIM |
| Note Date: | 01/22/2021 03:30 | Provider: | Mank, Michael DO | Unit: | C01 |

Admin Note - General Administrative Note encounter performed at Health Services.
**Administrative Notes:**

ADMINISTRATIVE NOTE   1          Provider:  Mank, Michael DO

As per BOP Guidance COVID-19 Testing: Indications for Testing Inmates in the Federal Bureau of Prisons, inmate is being released from ISOLATION and is now Resolved/Recovered from COVID-19

**ASSESSMENTS:**

Confirmed case COVID-19, U07.1 - Resolved

**Discontinued Radiology Request Orders:**

| Details | Frequency | End Date | Due Date | Priority |
|---|---|---|---|---|
| General Radiology-Chest 2 Views | One Time | | 12/29/2020 | Today |

Order Set Name: BOP - Infectious Disease - COVID 19 - V3

Specific reason(s) for request (Complaints and findings):

COVID screening A/P:
1) ID_COVID19 detected 12/21/2020 by NAAT

**Copay Required:** No          **Cosign Required:** No
**Telephone/Verbal Order:** No

Completed by Mank, Michael DO on 01/22/2021 03:32